IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SIERRA CLUB,

                            Plaintiff,

      v.

LISA JACKSON, Administrator of the United
States Environmental Protection Agency,

                         Defendant.

**OPINION AND ORDER**

11-cv-315-wmc

---

In this action, the Sierra Club sought declaratory and injunctive relief under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, against Lisa Jackson, Administrator of the United States Environmental Protection Agency (hereinafter, "the EPA"). The parties settled, anticipating the eventual entry of a stipulated, final judgment in favor of the Sierra Club upon satisfaction of all conditions of the settlement agreement. In keeping with this result, the court dismissed the action with leave to reopen to enforce the settlement agreement. Although the court has not been asked to reopen to enter final judgment, Sierra Club has moved for an award of attorneys' fees and costs pursuant to § 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d). The EPA does not oppose an award of fees, but disputes the reasonableness of the rates and hours requested. The court finds the EPA's argument justified in part and, for the reasons discussed below, will award the Sierra Club $9,213.00 in attorneys' fees and $429.08 in costs.

BACKGROUND

On April 29, 2011, the Sierra Club brought suit against EPA Administrator Lisa Jackson, alleging that she had violated Clean Air Act § 505(b)(3) and § 505(c), 42 U.S.C. § 7661d(b)(3) & (c), by failing to take action on a Title V permit issued by the Wisconsin Department of Natural Resources to the J.P. Pulliam Power Plant in Green Bay, Wisconsin.  After protracted negotiations and several motions for extension of time, the parties filed a settlement notice on May 15, 2012, in which the EPA agreed to consider objections to, and promptly take action on, a more recent, revised version of the Pulliam permit.  (Dkt. # 23.)

Section 304(d) of the Clean Air Act, 42 U.S.C. §7604(d), provides that "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  This statutory fee-shifting provision encompasses "so-called catalysts-parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits." *Sierra Club v. EPA*, 322 F.3d 718, 719 (D.C. Cir. 2003).  Although the settlement here did not produce the result sought in the complaint, the EPA concedes that the Sierra Club has achieved substantial relief, and is thus entitled to an award of fees and costs under § 304(d), while disputing the reasonableness of the fees requested.

OPINION

The Sierra Club seeks attorneys' fees using the lodestar method, an approach that has been expressly approved for the Clean Air Act's "citizen suit" fee-shifting provision. *See Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 559 (1986) ("A strong presumption that the lodestar figure . . . represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute, including the one in the present case."). An attorneys' lodestar is typically calculated as the "number of hours reasonably expended on the litigation" multiplied by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As the fee applicant, the Sierra Club "bear[s] [ ] the burden of . . . documenting the appropriate hours expended and hourly rates." *Id.* at 437.

The Sierra Club is represented by McGillivray Westerberg & Bender LLC, a law firm located in Madison, Wisconsin. Attorneys Pamela McGillivray and David Bender worked on this case, and each claims a billing rate of $415/hour. According to detailed time records supplied to the court, McGillivray and Bender spent a combined 29.2 hours working on this case from October 18, 2010 until the submission of the petition for fees in June 2012.[1]  (McGillivray Decl., dkt. #27-1.)

---

[1]  The original request for fees (dkt. #26) and the supporting timekeeping spreadsheet (dkt. #27-1) request fees for 30 hours of work. However, the Sierra Club subsequently clarified that it meant to bill only 29.2 hours of work. Accordingly, it has reduced the fee request by $332.00.

## I.  Hourly Rate

The EPA objects to the Sierra Club's proposed rate of $415/hour, arguing that this figure far exceeds McGillivray and Bender's actual rate, as well as the rate charged by Madison attorneys with comparable experience for similar work.  The court disagrees, at least to the extent this hourly charge represents a blended rate for the work of Attorneys David Bender and Pamela McGillivray on this specialized, contingency fee matter.

Reasonable hourly rates are to be determined on the basis of market rates for services rendered.   An "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."  *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996).  If the attorney has no actual billing rate, "the court should look to the next best evidence – the rate charged by lawyers in the community of 'reasonably comparable skill, experience and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 892, 895 n. 11 (1984)); *see also Spegon v. The Catholic Bishop of Chi.*, 175 F.3d 544, 556 (7th Cir. 1999).

### A. Actual Billing Rate

Attorneys McGillivray and Bender profess not to have a standard billing rate for Clean Air Act "contingency fee" cases.  The EPA disputes this, citing four Intervenor Compensation Applications that the Sierra Club recently filed with the Wisconsin Public Service Commission for services rendered by McGillivray Westerberg & Bender LLC on the Sierra Club's behalf in arguing before the Commission.   (Dkt. ##32-1; 32-2.) Intervenor Compensation Applications are a creation of state administrative law, meant

to encourage public participation in the Wisconsin Public Service Commission's decision-making process by reimbursing certain designated costs, including attorneys' fees, for interested parties who might not otherwise be able to participate.  *See* Wis. Stat. § 196.31; Wis. Admin. Code PSC §§ 3.01-3.09 (2012).

The first two Intervenor Compensation Applications submitted by the Sierra Club state in pertinent part:

> The Sierra Club proposes to use the legal services of McGillivray Westerberg & Bender LLC.  Attorneys Pamela R. McGillivray and David C. Bender will represent Sierra Club in this proceeding.
>
> . . .
>
> Attorneys McGillivray's and Bender's typical market rates vary from $250.00 to over $350.00 per hour.  Sierra Club is requesting compensation at a reduced rate of $175.00 per hour for its counsel.

(Dkt. #32-1 pp.7-8; #32-2 pp.6-7.)  The third application cited by the EPA contains an essentially identical request.  (Dkt. #32-3 n.1.)  The fourth seeks $200/hour for attorney Bender's time only.  (Dkt. #32-4 p.20.)

The EPA argues that the Intervenor Compensation Applications are empirical evidence of McGillivray and Bender's standard billing rate.  The Sierra Club responds that the rate sought represents McGillivray and Bender's special rate for work done before the Wisconsin Public Service Commission ("PSC"), not a standard billing rate for Clean Air Act citizen suit challenges.  It also points out that the hourly rate approved by the PSC is only meant to defray part of a non-profit's litigation costs from a segregated fund established for that purpose, making the rate charged "lo-bono," rather than market.  While the McGillivray and Bender firm does not otherwise explain why they *accept*

different rates for arguably similar work, the court can think of least one good reason: unlike in disputes before the Public Service Commission (where funding for attorneys' fees is pre-approved and payment nearly certain), the firm appears to take Clean Air Act cases on a contingency basis and must, accordingly, adjust their requested rate upward to account for the fact that in some cases they may recover no fee at all.

The court concludes, therefore, that there is no reliable evidence of McGillivray's and Bender's standard billing rate for Clean Air Act cases -- if any. Although the "typical market rates" previously quoted to the Wisconsin Public Service Commission are instructive as a ballpark estimate of the fees McGillivray and Bender command in standard litigation, and indeed evidence of the discounted, blended rate the firm will accept to do similar work for this same client where payment is virtually certain, the court does not regard them as conclusive proof of McGillivray's and Bender's rates.

### B.  Market Rate in the Community

Absent proof of counsel's standard hourly fee for this work, an attorney must support his or her requested rate with some form of external verification; a "self-serving affidavit alone cannot satisfy [the] . . . burden of establishing market value for that attorney's services." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999).  The best proxy for the market value of an attorney's services is the "rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care*, 90 F.3d at 1310.

As a threshold matter, the parties disagree about what community of attorneys should form the basis for comparison.  The Sierra Club argues that the relevant community is national in scope, comprising all attorneys around the country who practice Clean Air Act law.  In support of this approach, the Sierra Club cites *Jeffboat, LLC v. Director, Office of Worker's Compensation Programs*, 553 F.3d 487 (7th Cir. 2009), which holds that while it is possible to define "community" as "local market area," it is "just as consistent . . . to read the word as referring to a [national] community of practitioners; particularly when . . . the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market."  *Id.* at 490.

This court understands *Jeffboat* to direct the courts in this circuit to award fees at a rate consistent with what an attorney's peers are earning on the open market.  If an attorney is so specialized or renowned that he or she is competing in a regional, national or global market, it makes sense to look to those markets for guidance.  However, the *Jeffboat* practice of referring to a regional or national "community of practitioners" makes little sense if the attorneys are not competing beyond a local market area.  Indeed, in *Jeffboat* the Seventh Circuit affirmed a fee award calculated using a *visiting* attorney's home market rate, for litigation conducted in a forum with lower rates.  533 F.3d at 488-89.[2]

---

[2]  That is categorically different from the situation offered here, where the Sierra Club contends that an attorney litigating in his or her home market should be awarded higher fees based on awards made to other attorneys in other, more expensive, legal markets.  Certainly nothing in the record suggests that this firm or the lawyers perform work

Perhaps these attorneys are so outstanding, their "Clean Air Act litigation" practice so specialized and narrowly focused, or their exceptional feats of legal research and argument behind closed doors so exceptional, that it makes sense to start thinking about a regional or national community of equally-specialized practitioners, but absent proof, the court does not accept the premise, implicit in the Sierra Club's argument, that McGillivray and Bender's only true competition are attorneys residing in Washington, D.C. or Chicago.   There are certainly other environmental lawyers based in Madison, Milwaukee and elsewhere in Wisconsin who file citizen suits under the Clean Air Act (or, for that matter, under the Clean Water Act or and the Resource Conservation and Recovery Act), who could have taken this case and presumably achieved a comparable result.   It is to these attorneys that the Sierra Club should turn for affidavits relevant to reasonableness of the requested fees.[3]

Having concluded that it is not appropriate to look at a national market for Clean Air Act litigators, to the extent such market exists, the court will not consider the declaration provided by Robert Ukeiley, a Kentucky-based litigator.   (Dkt. #29.) Madison Attorney Lester Pines' affidavit is, however, relevant.   Mr. Pines avers that "$415 per hour for the three named partners at McGillivray Westerberg & Bender . . . is commensurate with current market rates for such services in Madison, Wisconsin."

---

beyond the local market.  On the contrary, the Sierra Club apparently retains them only for Madison-based litigation.

[3] In addition to not factoring in supply and demand, generally divorcing a fee award from the local market also ignores regional variations in living and business costs.   For example, what may be the minimum fee needed to meet rent, payroll and other overhead expenses in Manhattan may include a significant profit margin in Madison, Wisconsin.

(Dkt. #28.)  While still *not* direct evidence of what attorneys with McGillivray's and Bender's "skill, experience and reputation" are earning these days in Madison or Milwaukee, *Blum v. Stenson*, 465 U.S. 886, 892, 895 n. 11 (1984), and somewhat conclusory in that Mr. Pines' own market rate with over 35 years of fairly prominent litigation experience, fails to account for the significant difference in the experience of McGillivray and Bender, it is instructive of the high end of rates for Madison-based litigation practices.

In the Madison/Milwaukee-area legal marketplace, a successful law firm partner at a local or regional firm with ten to fifteen years of litigation experience might expect to command a rate between $300 and $400/hour; an attorney with five to ten years of experience typically bills between $250 and $350/hour.  (*See* dkt. #36, ¶¶ 4-6.)  Pamela McGillivray and David Bender have thirteen and nine years of Clean Air Act litigation experience, respectively.  After taking into account that their hourly rates here were contingent on success, and should reflect the risk that they might not get paid at all for their efforts, the court finds Ms. McGillivray's requested rate lower than reasonable and Mr. Bender's rate at least within the range of reason, and a blended rate of $415 for their collective efforts on a contingent fee matter reasonable as well.

## II. Hours Billed

The EPA also objects to the reasonableness of the 29.2 hours that attorneys McGillivray and Bender spent working on this case.  The court agrees to some extent,

and will reduce the number of hours by seven, for a final award of $9,213.00 in attorney's fees.

An attorney fee applicant "bears the burden of . . . documenting the appropriate hours expended" and "should exclude from [the] . . . fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434, 437. The EPA suggests that the requested hours be reduced in two respects. First, it argues that the 14.7 hours spent drafting the initial fee petition is excessive. The court agrees. By Pamela McGillivray's own affidavit, this case is only one of many Clean Air Act citizen suits that her law firm has filed against the EPA. There is no need to reinvent the wheel in each case, and the court is never surprised to see -- indeed, has come to expect -- fee petitions consisting primarily of reusable, boilerplate language. Thus, while hours spent preparing a fee petition are compensable, *Sierra Club v. E.P.A.*, 769 F.2d 796, 811 (D.C. Cir. 1985), the number of hours requested should be modest barring exceptional circumstances.

In this case, the attorneys went beyond a standard boilerplate fee request by advancing a novel argument, based on *Jeffboat, LLC v. Director, Office of Worker's Compensation Programs*, 553 F.3d 487 (7th Cir. 2009), in support of their requested billing rate. (*See* discussion at I.B, *supra*.) Even assuming that the hours expended to produce the one and a half pages of legal argument devoted to *Jeffboat* were reasonable as a matter of attorney time and effort, the court rejects a fee award for just over half of the *total* amount of attorney hours to this matter going devoted not to advancing any *substantive* environmental goal, but instead to the fee request itself. Moreover, at least some portion of any time spent researching and drafting a new argument for fee requests ought to be

10

factored into a law firm's overhead or general business expenses, and not billed to U.S. taxpayers under the guise of enforcing the Clean Air Act. Estimating that approximately seven of the eleven and a half hours spent on the fee request were devoted to researching and drafting the *Jeffboat* argument, the court will subtract that amount of time.

The EPA's second objection is that the Sierra Club is not entitled to fees for work undertaken prior to initiating litigation in this case. The EPA argues that because the Clean Air Act allows awards only for "costs of litigation," 42 U.S.C. § 7604(d), the fees and costs incurred by the Sierra Club before filing suit are not compensable. As support for this argument, the EPA points out that "[w]aivers of immunity must be construed strictly in favor of the sovereign . . . and not enlarge[d] . . . beyond what the language requires." *Michigan v. EPA*, 254 F.3d 1087, 1091 (D.C. Cir. 2001) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983)). The EPA contends that since the language of the statutory section requires awards only for "costs of litigation," then fees incurred for work leading up to litigation must be excluded as outside the strict boundaries of that phrase. *Id.*

The problem with the EPA's argument is that "litigation," even given its literal meaning, does not necessarily begin at the time a suit is formally filed -- preparatory work that precedes the filing of a complaint can be as essential to litigation as work done after filing. As the D.C. Circuit recognized in *Michigan v. EPA,* there must be some kind of cutoff to what preparatory work fits within the qualitative definition of the term "litigation." 254 F.3d at 1091. For example, work on administrative proceedings is not "litigation" just because administrative exhaustion is a jurisdictional prerequisite for filing

11

suit.  *Id.*  In this case, however, the fees requested apply to work that falls easily within the scope of litigation activities.  The 2.2 hours that the EPA opposes were spent researching and filing a notice of intent to sue, which is a statutory prerequisite for filing a lawsuit.  42 U.S.C. § 7604(b).  Unlike administrative proceedings, this matter is as closely bound up with the litigation process as any preliminary step save drafting the complaint itself.  Indeed, the Third Circuit has already found, based on the same reasoning used in *Michigan v. EPA*, that pre-filing time spent drafting a notice of intent to sue is compensable litigation activity under the Clean Air Act.  *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1189 (3d Cir. 1995).  Accordingly, EPA's request to exclude the 2.2 hours devoted to the notice of intent will be denied.


## III.  Costs

The Sierra Club has submitted a $429.08 bill of costs.  The EPA does not challenge this bill, and the court will grant these requested costs as well.


## IV. Summary

The court's fee reductions and award are summarized as follows:

|  | Hours | Fees |
|---|---|---|
| Initial Fee Request | 30.00<br>McGillivray = 15.5<br>Bender = 14.5 | $12,450.00<br>McGillivray = $6,432.50<br>Bender = $6,017.50 |
| Subtraction for spreadsheet error. | 0.8 | - $332.00 |
| Subtraction for excessive hours spent on attorney fee request. | 7.0 | - $2,905.00 |
| Fees Subtotal | 22.2 | $9,213.00 |
| Costs |  | $429.08 |
| Final Award |  | $9,642.08 |

ORDER

IT IS ORDERED that the Sierra Club is awarded $9,213.00 in attorneys' fees and $429.08 in costs for a total of $9,642.08.  Consistent with the court's earlier order (dkt. #30), the clerk's office shall include this award in the court's final judgment, which awaits further action by the parties.  In the meantime, this matter shall remain closed.

Entered this 25th day of September, 2013.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

13